# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PEEL PAYMENTS, LLC, | ) |
| Plaintiff, | ) |
| vs. | ) NO. CIV-16-0425-HE |
| FIRST DATA CORPORATION, ET AL., | ) |
| Defendants. | ) |

## TEMPORARY RESTRAINING ORDER

Plaintiff Peel Payments, LLC ("Peel") filed a motion seeking a temporary restraining order ("TRO") to require defendants First Data Corporation and First Data Merchant Services, LLC (collectively, "First Data") to reinstate the marketing agreement between the parties (the "Agreement"), to grant Peel access to First Data's data processing platform, and to continue making residual payments to Peel. A hearing on the motion was held on June 16 and 17, 2016.

Peel's claims are based on First Data's actions to terminate the Agreement. Under the Agreement, Peel marketed First Data's bank card processing services to merchants. Peel had access to various aspects of First Data's information systems (the processing platform) to enable it to provide services to the customers it generated for First Data. Peel asserts that First Data wrongfully terminated the Agreement and revoked Peel's access to the processing platform, thus preventing Peel from providing services to the merchants it generated and which it views as its customers. Peel also objects to any effort by First Data to cease payment to it of residual payments otherwise owed under the Agreement. The residual payments are part of the payment scheme for compensating Peel for its services in generating

clients.

First Data contends its termination of the Agreement was consistent with its terms, which grant First Data the right to terminate if Peel is determined to have acted fraudulently or in a manner injurious to First Data. First Data contends Peel improperly acted in concert with then-employees of First Data to shift customers generated directly by First Data into arrangements generated through Peel, to the financial detriment of First Data.

A party seeking temporary injunctive relief must show (1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant unless the injunction is issued; (3) that the threatened injury to the movant, if the injunction is not issued, outweighs the harm that issuance of the injunction may cause the opposing party; and (4) that the injunction, if issued, will not be contrary to the public interest. See Gen. Motors Corp. v. Urban Gorilla, LLC, 500 F.3d 1222, 1226 (10th Cir. 2007). If the movant can show that the latter three factors "tip decidedly" in its favor, the likelihood of success requirement is relaxed and the movant need only show that there are "questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation." Heideman v. South Salt Lake City, 348 F.3d 1182, 1189 (10th Cir. 2003) (internal citations and quotation marks omitted).

For the reasons stated more fully from the bench, the court concludes the motion for TRO should be granted in part and denied in part. Peel made a sufficient showing as to the third and fourth factors (balance of harm and public interest). The issue of irreparable harm presents a closer question, but the court concludes Peel has made a sufficient showing, based

2

on the termination's impact on its reputation in the industry, its loss of goodwill and marketing potential, and on its ability to meet contractual obligations to others, to satisfy this element.

As to the "likelihood of success" element, the court concludes Peel has not established that likelihood, even under the relaxed standard, on the question of whether First Data's termination of the Agreement was wrongful. As stated more fully at the hearing, Peel's reliance on theories of "theft of its customers" or lack of notice are inconsistent with the terms of the Agreement. Further, defendant produced strong evidence at the hearing to support its contention that Peel acted in concert with certain of First Data's employees to peel existing customer relationships away from direct client arrangements with First Data, to an arrangement less favorable to First Data and structured through Peel. As "any action by [Peel] deemed to be injurious to [First Data]" is grounds for termination (Agreement, para. 18(b)(iii)), the submissions to date indicate First Data had ample grounds to terminate.

That does not mean it also has the right to cease making residual payments. Under the Agreement, First Data is obligated to make residual payments, notwithstanding termination of the Agreement, unless the termination is due to "commission of [f]raudulent activity by [Peel]" (Agreement, para. 18(d)(iii)). Given the more exacting standards to establish "fraud" or "fraudulent activity", the court concludes Peel has made a sufficient showing of likelihood of success (i.e. sufficient to make the issue "fair ground for litigation") to warrant injunctive relief as to maintenance of the residual payments.

**THE COURT THEREFORE ORDERS:** Plaintiff's motion for temporary

restraining order [Doc. #19] should be **GRANTED** to this extent: defendants First Data Corporation and First Data Merchant Services, LLC are temporarily **ENJOINED** from withholding residual payments otherwise due to Peel under the Agreement between the date of termination of the Agreement and the court's disposition of plaintiff's request for a preliminary injunction. The motion is otherwise **DENIED**.

The court and parties did not address at the hearing the issue of a bond or other security. See Fed.R.Civ.P. 65(c). The parties are directed to confer and advise the court within seven days, by appropriate filing, of their view(s) as to whether security is necessary here and, if so, what the security requirement should be.

**IT IS SO ORDERED**.

Dated this 20th day of June, 2016.

*[signature]*
JOE HEATON
CHIEF U.S. DISTRICT JUDGE